IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

FEB 23 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEVY GUILLERMO RAMIREZ MEJIA, | ) | Criminal Case No. 1:15-cr-361 |
| a/k/a: "Levy Ramirez," | ) | |
| a/k/a: "Ramirez Levy," | ) | Hon. Liam O'Grady |
| a/k/a: "Levy Guillermo Ramirez-Mejia," | ) | |
| a/k/a: "Levy Guillermo Mejia Ramirez," | ) | |
| a/k/a: "Levy Guillermo Ramirez," | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## Memorandum Opinion

Before the Court is defendant Levy Guillermo Ramirez-Mejia's motion to dismiss the indictment charging him with unlawful reentry of a removed alien, in violation of 8 U.S.C. § 1326(a). (Dkt. No. 12). The government opposes the motion (Dkt. No. 15), and the Court heard argument on February 11, 2016. For the reasons that follow, the motion is denied.

### I. Background

Mr. Ramirez-Mejia is a citizen of Nicaragua who entered the United States illegally in 1990 at the age of six. In 2000, Ramirez-Mejia successfully applied for legal permanent resident status under the Nicaraguan Adjustment and Central American Relief Act. In 2004, at the age of 21, he was convicted in Prince William County of Assault and Battery on a Police Officer ("ABPO"), Va. Code § 18.2–57(C), and sentenced to five years' imprisonment with three years and seven months suspended. As a result of his conviction, Immigration and Customs Enforcement ("ICE") initiated removal proceedings. ICE charged Ramirez-Mejia with removability under the Immigration and Nationality Act ("INA") § 1227(a)(2)(A)(iii), which

1

provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Ramirez-Mejia, by and through counsel, moved to terminate the proceeding based, in part, on the classification of ABPO as an "aggravated felony" within the meaning of the statute.

On July 3, 2006, the Immigration Judge ("IJ") found Virginia's ABPO statute is an "aggravated felony" and ordered Ramirez-Mejia removed to Nicaragua.[1] Although Ramirez-Mejia had notice of the thirty-day time period within which to appeal the IJ's decision to the Board of Immigration Appeals ("BIA"), he declined to do so because his counsel advised him that an appeal would be futile. On July 12, his counsel faxed a copy of the IJ's decision to the Department of Homeland Security along with the instruction, "Deport my client please."

At some point, Ramirez-Mejia reentered the United States because in 2015 he was arrested for possession of a controlled substance and transferred to ICE custody. A grand jury subsequently returned an indictment charging him with unlawful reentry of a removed alien, in violation of 8 U.S.C. § 1326(a). Ramirez-Mejia now moves to dismiss the indictment on the ground that the underlying deportation order cannot withstand scrutiny.

## II. Legal Framework

A.   Collateral Attack on a Deportation Order Under § 1326(d)

Section 1326(a) of the INA "forbids an alien who once was deported to return to the United States without special permission." *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998). In *United States v. Mendoza-Lopez*, the Supreme Court held that an alien prosecuted

---

[1] ICE had also charged Ramirez-Mejia as removable under INA § 1227(a)(2)(A)(i) for having committed a crime involving moral turpitude within five years of admission, but the IJ found the government could not establish Ramirez-Mejia's date of admission. Thus, the sole basis for Ramirez-Mejia's deportation was the IJ's conclusion that he committed an aggravated felony.

under § 1326 "may assert in that criminal proceeding the invalidity of the underlying deportation order." 481 U.S. 828, 830, 838–39 (1987).  Congress subsequently amended § 1326 to allow collateral attacks under certain, limited circumstances.  It provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

§ 1326(d).  Because the statute joins the requirements in the conjunctive, "a defendant must satisfy all three in order to prevail." *United States v. El-Shami*, 434 F.3d 659, 663 (4th Cir. 2005).  If a defendant is successful, the court must dismiss the illegal reentry charge as a matter of law. *Id.*

B.    Deportation Under § 1227(a)(2)(A)(iii)

Section 1227(a)(2)(A)(iii) of the INA provides that aliens convicted of an "aggravated felony" after admission are deportable.  The INA broadly defines the term "aggravated felony" to "include a host of offenses," *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1682 (2013), including "crime[s] of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F).  Section 16, in turn, defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

3

18 U.S.C. § 16. Subsection (b) is commonly referred to as the "residual clause."

In *United States v. Carthorne*, 726 F.3d 503 (4th Cir. 2013), the Fourth Circuit considered for the first time the question of whether ABPO in Virginia categorically qualifies as a crime of violence under a similar residual clause in the United States Sentencing Guidelines.[2] Looking to Virginia common law definitions of assault and battery, the court determined that ABPO "may be accomplished by the slightest touching or without causing physical injury to another." *Id.* at 514. Consequently, the court concluded that the "statute cannot, by reason of its elements, be viewed as presenting a *serious* potential risk of physical injury." *Id.*

C.     The Impact of *Johnson* on Other Residual Clauses

As noted, the Fourth Circuit reached the question of ABPO's categorization in the context of the definition of "crime of violence" found in Section 4B1.2 of the Guidelines. The Guidelines' definition of "crime of violence" is substantively identical to the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2). The Supreme Court recently held the ACCA's residual clause violated the Due Process Clause's prohibition on vagueness. *Johnson v. United States*, 135 S. Ct. 2551 (2015).

Section 16's residual clause employs language that is very similar to the ACCA's residual clause, but it is not "identical[]." *United States v. Fuertes*, 805 F.3d 485, 499 n.5 (4th Cir. 2015). For instance, the ACCA's residual clause contains four enumerated examples of violent felonies, while § 16(b) does not. Despite these variances, three courts of appeals have extended the *Johnson* Court's reasoning to § 16(b) and held it to be unconstitutionally vague.

---

[2]     The focus of *Carthorne* was on the residual clause, not subsection (a)—the "force clause." The parties agreed that after the Fourth Circuit's 2010 decision in *United States v. White*, 606 F.3d 144 (4th Cir. 2010), Virginia ABPO does not categorically have "as an element the use, attempted use, or threatened use of physical force against another." 726 F.3d at 513.

*See United States v. Gonzalez-Longoria*, No. 15-40041, 2016 WL 537612, at *9 (5th Cir. Feb. 10, 2016); *United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1119 (9th Cir. 2015).

Another residual clause found in § 924(c), which imposes a mandatory minimum sentence on anyone who uses or carries a firearm during or in relation to a "crime of violence," has also been the subject of vagueness challenges following *Johnson*. As is relevant here, § 924(c)'s definition of "crime of violence" is identical to that found in § 16. The Sixth Circuit recently rejected *Johnson*'s application to § 924(c) on the ground that § 924(c)'s residual clause is materially distinguishable from the clause at issue in *Johnson* and those differences place § 924(c)'s clause outside the reach of *Johnson*'s rationale. *United States v. Taylor*, No. 09-5517, 2016 WL 537444, at *32 (6th Cir. Feb. 11, 2016).

The Fourth Circuit has not directly considered the constitutionality of § 16(b) or § 924(c)(3)(B) in light of *Johnson*. However, in a post-*Johnson* decision, the Fourth Circuit was faced with the question of whether sex trafficking by force, fraud, or coercion was categorically a crime of violence under § 924(c)(3). The defendant argued that the residual clause was void for vagueness following *Johnson. Fuertes*, 805 F.3d 485. Citing constitutional avoidance, the Fourth Circuit declined to reach the question. *Id.* at 499 n.5. Notably, however, the court stated that the Supreme Court did not have the occasion to consider § 924(c)(3)(B) and although the residual clause at issue in *Johnson* was "similarly worded," it is "not identically so." *Id.* District courts in this circuit have not reached § 16(b)'s constitutionality, but have upheld § 924(c)(3)(B). *See United States v. Green*, No. RDB-15-526, c, at *3 (D. Md. Jan. 21, 2016) (citing *Fuertes* and rejecting vagueness challenge to § 924(c)(3)(B)); *United States v. McDaniels*, No. 15-cr-171, 2015 WL 7455539, at *7 (E.D. Va. Nov. 23, 2015) (declining to reach the question, but noting

that "the Residual Clause of § 924(c)(3)(B) would likely not fail as unconstitutionally vague as it is distinguishable from the ACCA Residual Clause at issue in *Johnson*"); *United States v. Walker*, No. 15-cr-49, 2016 WL 153088, at \*9 (E.D. Va. Jan. 12, 2016) (same).

### III. Discussion

Ramirez-Mejia contends he can establish each of § 1326(d)'s prongs. He begins his argument with the third prong—fundamental unfairness—and the Court follows suit. Fundamental unfairness requires a dual showing that the defendant's "due process rights were violated by defects in the underlying deportation proceeding" and that the defendant "suffered prejudice as a result of the defects." *United States v. Cisneros-Garcia*, 159 F. App'x 464, 467 (4th Cir. 2005) (citing *United States v. Wilson*, 316 F.3d 506, 510 (4th Cir. 2003), *overruled on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006)). Ramirez-Mejia identifies two alleged defects in the underlying proceeding, both directed at the IJ's categorization of ABPO as a "crime of violence" within § 16(b)'s residual clause and thus an "aggravated felony" under § 1227. First, he says *Carthorne* established that the IJ's statutory interpretation was incorrect at the time decided and that he was never removable as charged. Ramirez-Mejia submits that deporting a lawful permanent resident based on a legally erroneous interpretation of a statute offends due process. Second, he argues that because the deportation order relied solely on § 16(b) and after *Johnson*, § 16(b) is a nullity, the underlying proceeding was fundamentally unfair.

Both of Ramirez-Mejia's arguments raise novel questions about the scope of "fundamental unfairness" under § 1326(d)(3).[3] For instance, under what circumstances can post-

---

[3] The government does not dispute, nor could it, that prejudice flowed from these alleged defects. Ramirez-Mejia would have remained in the United States absent the IJ's determination

removal precedent render a prior deportation proceeding fundamentally unfair? The government submits that where, as here, the IJ reached a fair interpretation of a statute under the law as it then existed in a proceeding that otherwise comported with due process—that is, provided the alien notice and an opportunity to be heard—a subsequent decision that establishes the IJ was wrong does not rise to the level of a due process violation. Certainly, the government is correct that, as a general matter, an IJ's decision should be reviewed in light of the law as it then existed. A different baseline would require clairvoyance on the part of the IJ to anticipate future changes in the law and would threaten the finality of deportation proceedings. At least the Ninth Circuit has found this rationale breaks down, however, where post-removal precedent establishes that a legal permanent resident alien was removed when he or she should not have been. *See United States v. Aguilera-Rios*, 769 F.3d 626, 631 (9th Cir. 2014) (drawing a distinction between post-removal precedent that establishes an alien, otherwise removable, may have been eligible for discretionary relief and post-removal precedent that establishes an alien was never removable).[4] In that context, the Ninth Circuit held the prior proceeding is fundamentally unfair.[5]

---

that Virginia ABPO fell within § 16(b). The IJ rejected the government's only other ground of removability.

[4] Of some interest here is the government's earlier position on *Aguilera-Rios* taken in *United States v. Lopez-Collazo*, 105 F. Supp. 3d 497 (D. Md. 2015). There, as here, a post-removal decision from the Fourth Circuit established that the conviction underlying the defendant's earlier removal order was not an aggravated felony. The defendant cited *Aguilera-Rios* in arguing that the subsequent decision established fundamental unfairness. In response, the government distinguished *Aguilera-Rios* on the ground that the alien in that case was a lawful permanent resident with a right to remain in the United States and thus a liberty interest in his removability. In *Lopez-Collazo*, the alien had been in the United States illegally. Like the defendant in *Aguilera-Rios*, Ramirez-Mejia was also a permanent resident alien with a right to remain in the United States but for the IJ's incorrect interpretation of the statute. *Cf. Wilson*, 316 F.3d at 510 (instructing that a defendant must have had a "property or liberty interest at stake").

[5] At least one district court in this circuit has found fundamental unfairness in similar circumstances. *See United States v. Merino-Hernandez*, 46 F. Supp. 3d 602, 608 (D. Md. 2014).

Moreover, Ramirez-Mejia has directed the Court to the recent decisions from the Fifth, Seventh, and Ninth Circuits that threatens the continuing viability of § 16(b). Whether the Fourth Circuit will follow suit and additionally whether such a decision would be retroactive on collateral review of a deportation proceeding are questions that will have to wait for another day. While Ramirez-Mejia has raised serious questions as to whether the entry of the deportation order was fundamentally unfair, a successful collateral attack requires him to establish all three of § 1326(d)'s prongs. That he cannot do.

Section 1326(d)(1) imposes a statutory administrative exhaustion requirement. There is a distinction in the case law between statutory exhaustion requirements, such as that set forth in § 1326, and judicially created exhaustion requirements. The former "are mandatory, and courts are not free to dispense with them" or to craft equitable exceptions where none exist. *United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002).

It is undisputed that Ramirez-Mejia took no action in response to the IJ's decision. There was no motion for reconsideration filed and no appeal to the BIA. Ramirez-Mejia cites only one ground to excuse his failure to exhaust his available administrative remedies: futility. Specifically, he contends that any appeal would have been futile under then-existing precedent.[6]

Ramirez-Mejia does not direct the Court to a single case from the Fourth Circuit recognizing a futility exception to § 1326(d)'s exhaustion requirement. Even where courts have recognized futility, it is narrowly defined and applies only "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a

---

(finding fundamental unfairness where Fourth Circuit law subsequently made clear that the underlying conviction was not a "crime of violence").

[6] There is no allegation that he was not informed of his right to appeal or that any waiver of his right to appeal was not knowing and voluntary.

complaint." *United States v. Copeland*, 376 F.3d 61, 67 (2d Cir. 2004) (quoting *Booth v.*

*Churner*, 532 U.S. 731, 736 (2002)); *see also Sousa v. INS*, 226 F.3d 28, 32 (1st Cir. 2000)

(explaining futility as "where a resort to the agency would be futile because the challenge is one

that the agency has no power to resolve in the applicant's favor"); *United States v. Lepore*, 304

F. Supp. 2d 183, 193 n.6 (D. Mass. 2004) ("The Court uses the word 'futile' in a narrow sense, to

refer to cases where the Board is powerless to address a particular matter. The 'futility'

exception in a judicially created exhaustion regime would include a broader class of cases.").

Thus, futility in this context is a recognition that under certain circumstances particular

administrative relief may be unavailable.

Ramirez-Mejia contends he falls within this narrow definition of futility because "[i]n

2006, courts in the Fourth Circuit uniformly mis-interpreted Virginia ABPO as a crime of

violence under controlling precedent, and the [BIA] was obliged to follow that precedent in

ordering Mr. Ramirez-Mejia's removal." Dkt. No. 12, at 8; *see also id.* at 10 ("[I]n 2006, the

BIA was bound by controlling precedent, which unequivocally directed that Virginia ABPO was

a crime of violence."). Certainly, had there been binding Fourth Circuit precedent at the time of

the IJ's order, the BIA would have been bound on appeal. Contrary to Ramirez-Mejia's

assertions, however, there was no controlling precedent in this circuit on the categorization of

Virginia ABPO until *Carthorne* issued in 2013. *See Carthorne*, 726 F.3d at 516 ("Prior to the

present case, this Circuit had not addressed the issue whether ABPO in Virginia was a crime of

violence under the Guidelines' residual clause."). Ramirez-Mejia cites three cases to establish

binding precedent: a First Circuit decision, a Western District of Virginia decision, and a BIA

decision—all holding ABPO is a crime of violence.[7] The district court opinion and the BIA

decision both post-date the IJ's decision in Ramirez-Mejia's case and thus do nothing to establish

the BIA's inability to rule in his favor. While the First Circuit decision issued in 1997, *see*

*United States v. Fernandez*, 121 F.3d 777, 779–80 (1st Cir. 1997), it would not have been

binding on the BIA in ruling on Virginia ABPO.[8] In sum, Ramirez-Mejia points to nothing that

would have removed the BIA's power to rule in his favor on appeal.

In reality, then, Ramirez-Mejia is urging the Court to accept a different type of futility—

an equitable exception based on the likelihood of the BIA ruling in his favor. In the context of

the statutory administrative exhaustion requirement found in 8 U.S.C. § 1252(d), the Fourth

Circuit has refused to import equitable exceptions. *Massis v. Mukasey*, 549 F.3d 631, 640 (4th

Cir. 2008) (refusing to import a "miscarriage of justice" exception). In reaching that conclusion,

the court cited favorably to an Eighth Circuit decision "declining to craft a futility exception to

section 1251(d)(1)'s administrative exhaustion requirement." *Id.* (citing *Bah v. Mukasey*, 521

F.3d 857, 859 (8th Cir. 2008)). In *Bah*, an alien argued futility of administrative procedures on

the ground that "he ha[d] already lost an identical appeal to the [agency]." 521 F.3d at 859.

Citing the Supreme Court's instruction in *Bowles v. Russell*, 551 U.S. 205, 214 (2007), that

---

[7] Ramirez-Mejia also cites an unpublished Fifth Circuit opinion, but that case did not involve a challenge to the categorization of assault and battery on a police officer as a crime of violence under § 16. *United States v. Hinkson*, 248 F.3d 1142, 2001 WL 184823, at *1 (5th Cir. 2001) (unpublished table opinion).

[8] Indeed, by the time the issue reached the Fourth Circuit in 2013, the circuits were split on the issue. *See Carthorne*, 726 F.3d at 516 (noting that "sister circuits are not in accord"). The First, Tenth, and Eleventh Circuits had held ABPO in other jurisdictions fell within the residual clause because of the degree of risk of physical injury to another, but the Seventh Circuit had concluded that the Illinois crime of "making insulting or provoking physical contact with a peace officer" did not. *Compare Rozier v. United States*, 701 F.3d 681, 682 (11th Cir. 2012), *United States v. Dancy*, 640 F.3d 455, 470 (1st Cir. 2011), *and United States v. Williams*, 559 F.3d 1143, 1149 (10th Cir. 2009), *with United States v. Hampton*, 675 F.3d 720, 731 (7th Cir. 2012).

courts have "no authority to create equitable exceptions to jurisdictional requirements," the Eighth Circuit rejected the futility argument. For the same reasons, this Court will not craft an equitable futility exception to § 1326(d)(1)'s administrative exhaustion requirement. *Cf. United States v. Larios-Buentello*, 807 F.3d 176, 177 (7th Cir. 2015) ("[Defendant] offers an excuse for the failure to exhaust administrative remedies—he maintains that someone told him that an appeal would be futile—but the statute requires exhaustion, not excuses. . . . An administrative appeal was available, even if unlikely to succeed. A litigant's unilateral belief that an appeal would fail does not make the opportunity 'unavailable' or excuse failure to use the procedure."); *United States v. Castillo*, 27 F. App'x 904, 908 (9th Cir. 2001) (rejecting futility based on argument that "it was very likely [defendant] would have lost").

There is likewise no indication that Ramirez-Mejia was improperly deprived of the opportunity for judicial review. He chose not to appeal the IJ's decision to the BIA, which in turn precluded him from submitting a petition to the Fourth Circuit for judicial review of his statutory and constitutional claims. *Cf. Larios-Buentello*, 807 F.3d at 177 ("He did not appeal to the BIA, which also prevented a request for judicial review."). While 8 U.S.C. § 1252 generally bars judicial review of a final removal order based on an aggravated felony conviction, courts of appeal retain jurisdiction to review the factual determination that an alien was convicted of an aggravated felony as well as "constitutional claims or questions of law." [9] § 1252(a)(2)(D); *see*

---

[9] The government concedes Ramirez-Mejia could not have raised a vagueness challenge to § 16(b) before the BIA. But if the BIA had rejected his statutory claim, he could have raised a constitutional argument before the Fourth Circuit. *See* § 1252(a)(2)(D); *Mbea v. Gonzales*, 482 F.3d 276, 278 n.1 (4th Cir. 2007) ("Although that section [1252] generally bars judicial review of final removal orders when those orders are entered on the ground that the alien committed an aggravated felony or a crime involving moral turpitude, it permits review where, as here, a petition for appeal raises 'constitutional claims or questions of law.'").

*also Turkson v. Holder*, 667 F.3d 523, 527 (4th Cir. 2012); *Ramtulla v. Ashcroft*, 301 F.3d 202, 203 (4th Cir. 2002) (per curiam).

The only ground that Ramirez-Mejia identifies for his inability to access judicial review is futility.  Dkt. No. 12, at 8 ("[T]here was no realistic judicial review available given controlling law."); *id.* at 11 ("Mr. Ramirez-Mejia was deprived of judicial review because precedent was settled in 2006 regarding his conviction for Virginia ABPO was a crime of violence."); *id.* at 12 ("Mr. Ramirez-Mejia's claim was . . . foreclosed at the time of his removal.").  For the reasons already explained, that argument has no merit.

## IV.  Conclusion

Even assuming Ramirez-Mejia can show fundamental unfairness, he cannot establish the first two prongs of § 1326(d) and his collateral attack must fail.  Accordingly, the Motion to Dismiss Indictment (Dkt. No. 12) is DENIED.  An appropriate order will issue.


February 23, 2016
Alexandria, Virginia


_____ /s/
Liam O'Grady
United States District Judge

12